| | |
|---|---|
| In re: | Chapter 7 |
| LGI Energy Solutions, Inc., | Bky. Case No. 09-40665-RJK |
| and | |
| LGI Data Solutions Company, LLC, | Bky. Case No. 09-40666-RJK |
| Debtors. | |
| (Substantively consolidated cases) | |
| John R. Stoebner, Trustee, | Adv. No. 11-04063 |
| Plaintiff, | |
| vs. | |
| Florida Power Corporation d/b/a Progress Energy Florida, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

John R. Stoebner, trustee of the Chapter 7 bankruptcy estates of LGI Energy Solutions, Inc. ("LGI Energy") and LGI Data Solutions Company, LLC ("LGI Data," and together with LGI Energy, "Debtors"), respectfully submits the following Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, and in the Alternative Motion For a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e).[1]

---

[1] In the interest of economy, the Trustee is filing in each of the adversary proceedings a single response to the essentially identical motions filed by the 15 separate defendants ("Defendant,"

## INTRODUCTION

(2) ***Alternative Statements of a Claim or Defense.*** A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) ***Inconsistent Claims or Defenses.*** A party may state as many separate claims or defenses as it has, regardless of consistency.

Federal Rule of Civil Procedure 8(d).

Despite the plain and unequivocal language of Rule 8, Defendants are asking this Court, at the early Rule 12 stage, to dismiss the Trustee's Complaint because the Trustee cannot say with certainty which theory of liability is the correct one to avoid the Debtors' payments to Defendant: Were the transfers fraudulent or merely preferential? The Trustee is confident that the evidence to be adduced during discovery – much of which is within the possession of the Defendants or third parties – will establish the correct theory of Defendants' liability.

But before ever considering the legal arguments in this matter, the Court can deny the motion because almost all of Defendants' so-called facts derive from extraneous materials not to be considered at this stage of the litigation. Under the guise of the "public records" exception to Rule 12's prohibition against extraneous materials, Defendants cite to a host of "facts" cherry-picked from various documents filed in other, unrelated court proceedings. The Court should

---

"Defendants," or "Utility Defendants") that are represented by Russell R. Johnson and Deborah C. Swenson: Ameren Illinois Company (11-4048) ; Appalachian Power Company (11-4074); City of Rocky Mount Public Utilities (11-4049); Consolidated Edison Company of New York, Inc. (11-4050); The Detroit Edison Company dba DTE Energy (11-4053); Duke Energy Ohio, Inc. *et al.* (11-4054); Florida Power Corporation dba Progress Energy Florida (11-4063); Long Island Power Authority (11-4057); Massachusetts Electric Company dba National Grid et al (11-4058); Oklahoma Gas & Electric Company (11-4084); PECO Energy Company (11-4061); Reliant Energy Retail Services, LLC (11-4064); San Diego Gas & Electric Company (11-4065); Southern California Edison Company (11-4066); Virginia Electric and Power Company dba Dominion Virginia Power and. (11-4052). Defendant Appalachian Power Company raised one additional argument in its Motion, to which the Trustee also responds herein. In the interest of consistency, all of the Trustee's references to Defendants' Memorandum of Law will be to that filed by Appalachian Power Company in Adv. No. 11-4074.

not consider these extraneous matters, nor should the Court convert this motion to one for summary judgment. As is plainly evident from the number of disputed and unresolved material facts that Defendants would like the Court to resolve in their favor right now, these adversary proceedings need discovery to assist the parties – and the Court – in understanding the true nature of the transactions set forth in the Trustee's correctly pled Complaint.

<u>**BACKGROUND FACTS**</u>

**A.** **The Commencement Of These Cases By Involuntary Petitions And The Trustee's Avoidance Actions.**

As the Court is well familiar, these bankruptcy cases were commenced as involuntary bankruptcy proceedings by several creditors of the Debtors. The first schedules in these cases were prepared by the petitioning creditors based on the information available to them. As is often the case, despite those creditors' best efforts, the initial schedules were lacking. The Trustee later prepared amended schedules, based on the somewhat better, but still incomplete, information available to him.

Despite his substantial efforts and inquiry, the Trustee has never had, however, complete business records for the Debtors, including crucial financial records. Instead, the Trustee has had to reconstruct what records he has through the cumbersome process of subpoenaing bank records and by triangulating the explanations of lower-level employees of the Debtors. The Trustee's challenges to ascertaining the details are exacerbated by the fact that, as described *infra*, the person with the best knowledge of the Debtors' financial web, is the defendant in a separate action by the Trustee to avoid and otherwise recover the fruits of the Debtors' fraudulent scheme.

Similarly, the Trustee does not have copies of all of the invoices submitted by customers of the Debtors, such as Buffets, Inc., nor does the Trustee have the proprietary computer software or hardware used to operate the Debtors' utility-management and billing system. The bottom line is that there is much the Trustee does not yet know about this case. The missing

evidence will have to be obtained through discovery and subpoenas directed to third parties, which is a cumbersome and time-consuming process.[2]

Based on the information he was able to piece together, the Trustee and his legal counsel reviewed and evaluated transfers made by the Debtors to over six score different recipients. The Trustee sent out demand letters to approximately 89 entities; nearly two-thirds of which claims were either voluntarily discontinued by the Trustee or resolved by mutually agreeable settlement. In March 2011, the Trustee commenced a total of 37 adversary proceedings, by which the Trustee asserted claims under Sections 547 and 548 of the Bankruptcy Code and under the Minnesota Fraudulent Transfer Act, Minn. Stat. § 513.41 *et seq.* To date, the Trustee has successfully negotiated settlements that will yield $235,406.16 of benefit for the estates' creditors. [See Bky. Doc. Nos. 177, 193 and 212].[3]

With respect to the non-settled adversary proceedings, the Trustee anticipates conducting considerable discovery in order to prepare these matters for the Court's determination, including into the following matters:

- All contracts between the Debtors and third parties pertaining to payments by the Debtors to any of the Utility Defendants in other pending litigation;
- Correspondence and contracts by and between the Debtors and the Defendants;
- Evidence of payment, including check copies, going back to 2003, or a period of six years provided by Minn. Stat § 513.41 *et seq;*
- The source and amount of fees, if any, received by the Debtors from any customers with respect to their bill paying service;
- Examine and tie-together all bank statements for the Debtors;
- Establish the true losses associated with the Debtors' money-losing/fraudulent enterprise;
- Expert analysis and sworn testimony of the Debtors' employees and professionals that the enterprise was operated at a substantial loss.

---

[2] The Trustee has expressly reserved the right to amend the Complaint to seek avoidance of other transfers of Debtors' property that might be revealed or discovered in the course of discovery conducted in this action. (*See* Compl. ¶ 6.)

[3] Unless otherwise noted, all references to docket entries are those filed in Bankruptcy Case No. 09-40665, that of LGI Energy Solutions, Inc.

The Trustee is proceeding in a timely manner to complete this discovery. The Trustee has also, from the beginning, worked to position all of the proceedings involving the LGI Debtors for expeditious resolution. The Trustee's goal is to move this matter forward so that the issues involving the Utility Defendants can be submitted to the Court based on stipulated facts and cross-motions for summary judgment. To that end, Plaintiff's counsel and defense counsel have been in communication with each other via telephone and various written correspondence regarding the merits of their respective positions and the basis for the claims and defenses.

The Trustee has acknowledged from the beginning that the claims in this action are not run-of-the-mill preference and fraudulent transfer claims, and that there are unique legal and factual issues which will need to be addressed if these proceedings do not settle. The Trustee has shown his willingness to take these additional legal and factual issues into account in reaching settlements with the various parties to date. But that complexity has not dissuaded the Trustee from carrying out in good-faith his fiduciary obligation to maximize value for the estates' creditors.

**B.    The Trustee's Separate Lawsuit Against The Debtors' Principal, Dean Leischow.**

The Trustee has also commenced an adversary proceeding against Dean Leischow, the principal of the Debtors, and other parties, which adversary proceeding sets forth counts for conversion and a fraudulent transfer of the Debtors' assets in an amount in excess of $6.1 million. (*See* Complaint in Adv. No. 11-4041 ("Leischow Complaint"). The Complaint in that action—the substance of which is well known to Defendants' counsel—details the fraudulent scheme which ultimately culminated in the bankruptcy of the Debtors and which constitutes the background for the proceeding against the Utility Defendants.

The core facts underlying these bankruptcy proceedings and the Trustee's claims in Adv. No. 09-4041 are, by now, well known to all involved in these cases. Dean C. Leischow

("Leischow") owned and controlled both LGI Energy Solutions, Inc. and LGI Data Solutions Company, LLC. The Trustee believes, and has alleged, that Leischow used his control as the principal of the Debtors to make large distributions and transfers of the Debtors' funds to himself, his wife and his affiliate, L&A Finance and Marketing LLP ("L&A") (the latter being effectively a shell entity used in the transfer of funds from one account to another; in essence L&A functioned as a façade for Leischow's improper dealings). As alleged in the Leischow Complaint, during the six years prior to the filing of the bankruptcy petitions, Leischow caused the Debtors to make multiple transfers of their funds to or for the benefit of Leischow, his wife and L&A Finance in a total amount of not less than $6,100,000.00. (Leischow Compl. ¶11.)

In the course of their business operations, the Debtors received payments from various customers, including restaurants such as Buffets, Inc. These customers allege that the payments they made were supposed to be applied against their respective utility bills by the Debtors. In fact, however, it appears that a significant percentage of these payments was wrongfully retained, expended and or/transferred from the Debtors' accounts. (Leischow Compl. ¶16.) Instead of using these advanced funds to pay the specific bills the funds were intended to pay, the Debtors covered their customers' utility payments by commingling customers' funds with funds of other customers, as well as borrowed funds and some legitimate revenue, shuffling funds between accounts, and a continuous stream of advances from third parties such as Buffets, Inc. Because of this commingling, it cannot be said with any certainty that any customer's funds were actually used to pay a any utility bill associated with that customer.

In essence, Leischow used the Debtors as his personal piggy bank. Transfers were made by the Debtors for the benefit of Leischow, his wife and L&A for no, or inadequate, consideration. These transfers were made with the actual intent to hinder, delay and defraud the Debtors' then-present and future creditors – including utility companies such as Defendants.

(Leischow Compl, ¶¶ 55-57.)  Leischow needed to keep third-party creditors at bay, a task made difficult by his need to cover for the transfer of funds from the debtors' accounts that were being diverted for his own personal use.  Leischow's shell game came crashing to a halt when the Debtors reached their maximum loan limit at M&I Bank and M&I froze the Debtors' accounts.

## C.  Defendants' Motions To Dismiss.

In response to the Trustee's good-faith efforts to position this matter for early disposition on cross-motions for summary judgment, Defendants elected to preemptively file the present Rule 12 Motions to Dismiss and also to serve the Trustee with Motions for Sanctions. The Trustee has responded separately to the Motion for Sanctions.  That motion is so meritless, it suggests that it was served for no purpose other than harassment or bullying.[4]  For reasons discussed more fully below, Defendants' Rule 12 Motion is similarly without merit.

In moving under Rule 12, Defendants invoke facts and materials well outside the Complaint.  In particular, Defendants in their recitation of the facts discuss a number of pleadings filed with the Court in other matters.  The Trustee recognizes that this Court has some latitude in what materials should be a part of the record when the Court makes its ruling on a Rule 12 motion to dismiss.  As discussed below, however, the law is also clear that, in ruling upon a Rule 12 motion to dismiss for failure to state a claim upon which relief can be granted, the Court should not consider facts outside the pleadings which are in dispute.  Instead, the Court must accept as true the facts as alleged by the plaintiff.  Defendants' motion is dependent on facts that are very much in dispute.  For that reason alone, it should be denied.

Notwithstanding that he does not yet have the benefit of discovery, the Trustee respectfully submits that, on the basis of facts that are known, the claims alleged in the

---

[4] Given the likelihood that Defendants' Motion for Sanctions, if presented to the Court, would subject <u>Defendants</u> to sanctions, Defendants have, prudently, not filed their Motion for Sanctions.

Complaint—especially when considered in the context of the allegations of fraud set forth in the Leischow Complaint[5]—more than satisfy the pleading requirements of the Federal Rules of Bankruptcy Procedure, as interpreted by the courts.

For purposes of Defendants' Rule 12 Motion to Dismiss, the central focus is the three-way relationship between the Debtors, their customers (such as Buffets), and the utility companies (the Defendants). In this regard, Defendants include in their moving papers a high-level description of the Debtors and their business, which Defendants represent is derived from the bankruptcy proceedings.

Quoting from the Order of the United States District Court for the District of Minnesota, entered September 8, 2009, by which the District Court merely referred unrelated litigation to this Court, Docket No. 1, in Adv. No. 09-4299, Defendants describe the energy service agreements LGI Energy entered into with various corporate entities, including several restaurant chains with operations throughout the United States, as follows:

> LGI Energy Solutions, Inc. engaged in the business of managing and paying the utility invoices of the restaurants, including water, gas, electricity and sewage costs, owned and operated by the Debtors' petitioning creditors. Pursuant to the contracts, LGI Energy Solutions, Inc. received the petitioning creditors' monthly invoices from their utility providers and thereupon determined the gross amount due on each invoice. Petitioning creditors would then transfer that amount to a designated bank account that belonged to LGI Energy Solutions, Inc. Thereafter, LGI Energy Solutions, Inc. would access the petitioning creditors' funds in that account and pay the petitioning creditors' utility invoices. The contract provided that "LGI shall have a fiduciary duty to act in the best interest of [plaintiffs] free of self-dealing" and "[a]t no time shall LGI have a legal or equitable interest in [the] funds."

(Def. Mem. at p. 3.) Defendants further allege that, pursuant to the energy service agreements, LGI Energy Solutions received a fee for providing this utility invoice payment service. (*Id.*)

Defendants' reliance on this background language in a procedural order of the <u>District</u>

---

[5] The Trustee is prepared to amend the Complaint in this action to expressly incorporate the allegations concerning the larger fraud contained in the Leischow Complaint.

Court is inappropriate in the context of the dispositive Rule 12(b)(6) motion before this Court. As discussed below, with limited exceptions, a court looks only to allegations in the Complaint in deciding a Rule 12(b)(6) motion. Certainly it is inappropriate for a Court to consider disputed facts from other filings in deciding a Rule 12(b)(6) motion. Here, the Trustee respectfully submits that the quoted description of LGI Energy's business, to the extent it purports to describe how LGI Energy, in fact, functioned, is incomplete and, in part, inaccurate, and, accordingly, cannot be considered for purposes of this motion.

In particular, as noted above, far from keeping customers' funds separate in its bank account, LGI Energy's bank account contained commingled funds from a variety of different sources, which creates enormous tracing challenges in determining whose funds were used for which transactions. Whether LGI Energy paid fully the utility invoices of its customers on some or all occasions, as well as questions regarding the source of the funds used to pay those invoices, also remain the subject of discovery. What does appear clear, however—and what the Trustee has alleged—is that Leischow siphoned off Debtor funds for his personal use, which meant that the LGI entities were underfunded and could not have paid all bills of all creditors from customer funds. Similarly, although Defendants assert that LGI Energy Solutions "received a fee for providing this utility invoice payment service," there is nothing uncontroverted in the record to establish that fees were received by LGI Energy Solutions on all occasions, or what the amount of the fees received were. Again, this issue will need to be the focus of discovery, and, in any event, is not properly considered in the context of a Rule 12 motion.

Finally, the quoted statement that all contracts between LGI Energy Solutions and its customers contained language providing that: "LGI shall have a fiduciary duty to act in the best interest of [plaintiffs] free of self-dealing" and "[a]t no time shall LGI have a legal or equitable interest in [the] funds" is very much disputed. Although a Rule 12(b)(6) motion to dismiss is not

the proper context within which to decide issues of fact, the Trustee notes, for the record and in the interest of accuracy, that, to the best of his knowledge, the quoted language regarding the legal and equitable ownership of transferred funds appears only in contracts with Buffets, Inc.; it was not standard language used by LGI Energy in its contracts.[6] For that matter, it has not even been conclusively established that all contracts between Buffets and LGI Energy contained this restrictive language.

Against a backdrop that clearly contains issues both of unresolved fact and disputed fact, the Trustee, in good faith, pled claims reasonably supported by the evidence known at the time the Complaint was filed. The Counts of the Complaint are pled in the alternative, as permitted by the Bankruptcy Rules of Procedure, to reflect the reality that discovery may ultimately bolster one theory of liability over another. Defendants and their counsel are more than aware of the factual and legal basis for the Trustee's claims against them. (*See* Correspondence between Rosanne H. Wirth and Russell R. Johnson dated April 29, 2011, May 12, 2011, and May 13, 2011, which are attached as Exhibits A, B, and C to the Declaration of Rosanne H. Wirth filed herewith ("Wirth Decl.").

For purposes of this motion, the question is not whether the Trustee will ultimately prevail on the alleged claims. The question is whether the Trustee has stated claims upon which relief could be granted, assuming—as the Court must—that the facts are as alleged. As discussed below, there is no question but that that standard has been satisfied.

---

[6] The Trustee has not been provided with copies of contracts with any third parties with the exception of Buffets, Inc. The only contracts of which the Trustee is aware are those attached to various proof of claims and the Motion for Relief from Stay filed by Wendy's International. None of these contracts has the same language as the quoted language from a Buffets contract disclaiming the acquisition by Debtors of legal or equitable interest in funds transferred. [*See* Ulta Salon Proof of Claim, No. 83, Central Parking Proof of Claim No. 79; Restaurant Management Group of West Virginia, Proof of Claim No. 76, Restaurant Management Group, LLC, Proof of Claim No. 77. ]

# ARGUMENT

### A.     Legal Standard Under Fed. R. Civ. P. 12(b)(6).

The Trustee accepts, of course, that this Court is guided by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) in applying Federal Rule 12(b)(6), made applicable in bankruptcy under Fed. R. Bankr. P. 7012.   Neither *Twombly* nor *Iqbal,* however, altered the express language of Rule 12(b)(6).   And under that express language, dismissal is still only proper where a complaint fails to state a claim upon which any relief can be granted.   *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008).

At this stage of the litigation, a court must accept as true all of the factual allegations contained in the complaint.   *Twombly*, 550 U.S. at 556.   A plaintiff need not provide specific facts in support of the allegations, *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam), but must include sufficient factual information to provide the grounds on which a claim rests, and to "raise a right to relief above a speculative level."   *Schaaf*, 517 F.3d at 549.   To survive a motion to dismiss, a plaintiff need only state "enough facts to state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570.   *See generally Alliance Communications Co-op., Inc. v. Global Crossing Telecommunications, Inc.,* 2007 WL 1964271, *2 (slip op. D.C.S.D. 2007) ("To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), 'a complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory'") (*citing Twombly*).

Although *Twombly* and *Iqbal* articulated a new test for gauging the adequacy of a pleading under Rule 12(b)(6), they did not change the fundamentals of what a Court may consider in deciding a Rule 12(b)(6) motion.   And it is with respect to the application of these mechanics that the Trustee and Defendants disagree.

## 1. In deciding a Rule 12(b)(6), only limited materials outside of the Complaint are to be considered.

Defendants correctly quote *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999) for the proposition that, when considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." (Def. Mem. at p. 2.) Defendants, however, misconstrue and misapply the standard articulated in *Porous Media.* In particular, neither *Porous Media* nor the case authority in general allows this Court to consider automatically "the facts in the record of these cases [growing out of the LGI bankruptcy]" in the context of a Rule 12(b)(6) motion. (Def. Mem. at p. 2.)

The reference to materials in the "public record" has a very specific meaning in this context, as used by the Eighth Circuit and other courts. The ability of courts to look outside the allegations of the complaint to consider matters of public record without converting a Rule 12(b)(6) motion for failure to state a claim into a motion for summary judgment is a narrow exception to the general rule that a court decides a Rule 12(b)(6) motion on the pleadings. *See, e.g., General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). The exception decidedly does not open the door to a wholesale importation of documents or facts contained in documents not specifically attached to the pleadings. Instead, the exception applies to "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990). The exception is intended to allow courts to "avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *General Electric,* 128 F.3d at 1081.

In deciding what facts in the "public record" may be considered, the courts apply the standard set forth in Rule 201 of the Federal Rules of Evidence:

> A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the territorial jurisdiction of the trial court" or 2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Fed. R. Evid. 201(b). *See also Hennessy v. Penril Datacomm Networks,* 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite.") (cited in *General Electric,* 128 F.3d at 1081. *See also , United States v. Jones,* 19 F.3d 1549, 1553 (11th Cir. 1994) ("a court "may take judicial notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (court may take judicial notice of document filed in another proceeding "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Anderson News, L.L.C. v. American Media, Inc.*, 732 F. Supp.2d 389, 404 (S.D.N.Y. 2010) (Because allegations are often contested, courts will take judicial notice only of the existence of other publicly-filed court documents, not of their contents).

In the context of this action, this well settled gloss on the "public records" exception to the requirement that a Rule 12(b)(6) motion be decided on the pleadings, means, for example, that Defendants may not import into the record for purposes of their motion facts contained in another Court record in these bankruptcy proceedings—even if that Court record is an Order of the Court.  Specifically, as discussed more fully below, Defendants purported reliance on an Order of the District Court referring the separate Buffets litigation to this Court, to establish conclusively for purposes of their Rule 12 motion that LGI Energy had no "legal or equitable

interest" in any funds transferred to it by its customers for payment of utility bills—an issue very much contested in this proceeding—is wholly improper.

Simply put, Defendants' have strayed too far factually for this motion to properly be considered a Rule 12 motion to dismiss. Given the immediately apparent myriad unresolved and disputed facts, converting Defendants' motion to one for summary judgment[7] would serve no purpose. The better course would be for the Court to decline to consider these extraneous materials and to deny Defendants' motion.

### 2. Pleading in the alternative

The Trustee has pled the Counts of his Complaint in the alternative, to allow for the possibility that discovery may eventually establish that one legal theory is more viable than another. Rule 8 could not be any clearer that a plaintiff is entitled to plead both alternatively and inconsistently. *See also In re Mortgage Lenders Network, USA, Inc.,* 395 B.R. 871, 880 (Bankr. D. Del. 2008) (parties may plead in the alternative); *In re Allou Distributors, Inc.*, 387 B.R. 365, 412 (Bankr. E.D.N.Y. 2008) (while a plaintiff is not entitled to duplicative relief, there is no doubt that at the pleadings stage, a plaintiff is not required to elect a single theory upon which to proceed).

Just as parties are permitted to plead inconsistently under the Federal Rules of Procedure, so too, facts alleged in the context of one claim should not be construed as an admission against another alternative or inconsistent claim. *See, e.g., In re McCann, Inc.* 318 B.R. 276, 288-89 (Bankr. S.D.N.Y. 2004) (Rule governing inconsistent pleading allows a plaintiff to plead inconsistently, and the inconsistency may lie with the statement of facts or the legal theories adopted; a factual allegation in one claim should not be construed as an admission against another alternative or inconsistent claim.)

---

[7] See Fed. R. Civ. P. 12(d).

Consistent with the Trustee's right to plead in the alternative, Defendants cannot rely on facts alleged specifically in connection with one theory to defeat an alternative, inconsistent theory. Defendants are well aware that the Trustee has pled liability under Sections 547 and 548 of the Bankruptcy Code in the alternative. Among other things, Plaintiff's counsel has said as much explicitly in correspondence with defense counsel.

> You argue in your Motion to Dismiss that to the extent the transfers were on account of an antecedent debt that that constitutes reasonably equivalent value. We agree wholeheartedly with you. The two counts, Sections 548 and 547, were pled in the alternative. To the extent that your clients or other defendants argue that there was reasonably equivalent value because payments were made on antecedent debts, the Trustee would simply then direct his attention to the Section 547 claim. That is why these counts were plead in the alternative.

(*See* Wirth Decl. Ex. C.)

Defendants cannot use a factual allegation made in the context of one theory to defeat a second, admitted inconsistent, alternative theory as a matter of law under a Rule 12(b)(6) analysis. Thus, Defendants' argument (at p. 15) that Plaintiff's allegations made in the context of a Section 548 claim are necessarily defeated by factual allegations made in the context of an admittedly inconsistent, alternative Section 547 claim fails as a matter of law.

### 3. Liberality in pleading of fraud as applied to a Bankruptcy Trustee

Where, as here, the Complaint alleges claims for fraud, a trustee in bankruptcy—because he is a third-party outsider to the debtors' transactions—is afforded greater liberality in pleading than would otherwise be required under Rule 9 of the Federal Rules of Civil Procedure, and its Bankruptcy analog, Rule 9009. *See, e.g., Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009)("This is because of the trustee's 'inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.'") (*citing*

*Schwartz v. Kursman* (*In re Harry Levin, Inc. t/a Levin's Furniture*), 175 B.R. 560, 567-68 (Bankr. E.D. Pa. 1994).

It is important to focus upon some features that distinguish Bankruptcy Trustees from the generality of plaintiffs.

1. They are successors in interest to the debtor, with no first-hand knowledge of the facts underlying complaints that arise out of bankruptcy events.

2. Those non-parties with first-hand knowledge may be hostile and even (as here) a person convicted of making false statements about his finances. Some may personally benefit from concealing facts from the Trustee.

3. They may be personally liable for even slight negligence in failing to prosecute a cause of action that is an asset of their trust.

4. The two-year Statute of Limitations of 11 U.S.C. § 546 may be far shorter than the period of time that the debtor had in which to decide whether to pursue the case before the filing of the petition.

*In re Tremont Corp.*, 143 B.R. 989, 990 (Bankr. W.D.N.Y. 1992).

And the stringent pleading rules that apply in cases of alleged actual fraud do not apply, in any event, where the allegation is constructive fraud. *See, e.g., In re Bernard L. Madoff Inv. Securities LLC,* 2010 WL 5841402, at 227 (Bankr. S.D.N.Y. 2011) (heightened federal pleading standard for allegations of fraud does not apply to a complaint under Bankruptcy Code to avoid transfers as constructively fraudulent); *In re USDigital, Inc.*, 2011 WL 30974 (Bankr. D. Del. 2011) (complaint seeking to avoid transfer as constructively, and not actually, fraudulent to creditors need only set forth facts with sufficient particularity to apprise defendant fairly of charges against him).

**B.    The Trustee Has Stated A Claim For Avoidance Of Preferential Transfers Under 11 U.S.C. § 547.**

Count One of the Complaint asserts a claim for avoidance of preferential transfers under Section 547(b) of the Bankruptcy Code. Defendants assert that the Trustee cannot establish a *prima facie* case against Defendants under Section 547(b) because the Trustee has not proven in

his Complaint that during the ninety-day preference period, the Defendants were creditors of the Debtors or that the transfers alleged in the Complaint were made for or on account of an "antecedent debt" owed by Debtors to the Defendants.

Contrary to Defendants' assertion, the facts of this case reasonably support an argument, consistent with well-established law, both that Defendants were creditors of the Debtors during the relevant time period and that the 90 Day Transfers alleged in the Complaint were made for or on account of an antecedent debt owed by Debtors to Defendants.

### 1. Defendants are creditors of LGI Energy within the meaning of Section 547(b)(1).

As an initial matter, Defendants' argument that they were not creditors begs the question of why the Debtors were paying them money. As a matter of logic, the Trustee is rightful to <u>allege</u> that Defendants were creditors based on the fact of payment on an invoice sent by Defendant, even if discovery later proves a different type of relationship.

More particular to these actions, Defendants assert that customers including restaurants such as Buffets contracted with LGI Energy to manage and pay their utility invoices. Pursuant to these contracts, LGI Energy received funds from its customers, from which it was then obligated to pay the monthly invoices submitted by the Defendant Utilities. For this service, LGI Energy was to be paid a fee. Consistent with this description, the utility providers were intended third-party beneficiaries of the contract between the restaurants and LGI Energy, and, as such, have a right to sue on the contract (*i.e.*, they are creditors under the contract).[8]

Under well-settled law, a third-party beneficiary contract is formed when (1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third party; and (3) the performance of the terms of the contract renders a direct benefit to the third party. *See, e.g., Deckard v. General Motors Corp.*, 307 F.3d 556, 561 (7th Cir. 2002). Minnesota law is consistent with the law of other states in this regard. *See, e.g., Buchman Plumbing Co., Inc. v. Regents of the Univ. of Minn.*, 298 Minn. 328, 215 N.W.2d 479 (1974) (noting that primary test for determining whether party may sue on a contract as a third-party beneficiary is the "intent to benefit" test; and that third party is an intended beneficiary if, by the terms of the contract, performance is directly rendered to the third party by the promisor);

---

[8] Defendants suggest (at p. 8) that it is somehow relevant to this Court's assessment of whether the Trustee has reasonably pled a cognizable claim under 11 U.S.C. § 547 that "Defendant is not listed as creditor of the Debtors' estates." Defendants cite no authority in support of this assertion, and the Trustee is aware of none. Setting aside the limited factual information available for the creation of the schedules, another reason a creditor might not be scheduled as a creditor is because it received full payment prior to the bankruptcy and thus at the time of the petition would no longer be a creditor. If those payments occurred in the 90-days before the petition date, those payments probably are preferences.

*Northern Nat. Bank v. Northern Minn. Nat. Bank*, 244 Minn. 202, 209, 70 N.W.2d 118, 123 (1955) (noting that under Minnesota law, a "creditor beneficiary is defined as one to whom the promisee owes or is believed to owe a duty which is discharged by the promisor's performance."); *Crow & Crow, Inc. v. St. Paul-Mercury Ind. Co.*, 247 Minn. 426, 428, 77 N.W.2d 429, 431 (1956) ("A third-party beneficiary is one to whom the promisee owes or is believed to owe a duty [w]hich is discharged by the promisor's performance, and the contractual right the third-party beneficiary acquires is to enforce a promise made for his benefit which he otherwise would not be able to enforce.")

The Restatement (Second) of Contracts, which is followed by the courts in Minnesota, dispenses with the creditor-beneficiary/donee-beneficiary distinction and instead distinguishes between intended beneficiaries and incidental beneficiaries with intended beneficiaries acquiring a third-party right to enforce an agreement between two other parties. In this regard, the Restatement states:

> Unless otherwise agreed between promisor and promise, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1988). *See also Buchman Plumbing Co.,* 215 N.W.2d at 483 (referencing the tentative drafts of what eventually became Restatement (Second) Contracts § 302).

It matters not which of these definitions is used. Under any definition, utility providers such as Defendants constitute intended third-party beneficiaries of the contracts between LGI Energy Solutions and its customers. Clearly, the contracts were drafted with the intent that LGI (the promisor) would fulfill the obligation of the party contracting for its services (the promisee) to pay the invoices of the promisee's utility provider. The utility provider is undeniably an intended beneficiary of the contract and thus a creditor of the Debtors.[9] *See generally* 13 Williston on Contracts § 37.8 (4th ed.).

---

[9] Furthermore, consistent with a third-party beneficiary analysis, William Mohrman, who represents Buffets and several defendants in similar adversary proceedings, has argued that Defendants may have restitution claims against the Debtors for funds paid by Buffets and others to LGI Energy with the understanding that LGI Energy would use those funds to pay utility

2. **To the extent payment was made by LGI Energy to a utility in fulfillment of its contractual obligation to its customer, that payment constituted payment of an antecedent debt within the meaning of 11 U.S.C. § 547(b)(2).**

Under Section 547(b)(2) of the Bankruptcy Code, the payment sought to be avoided as a preference must be: "for or on account of an antecedent debt owed by the debtor before such transfer was made…." Defendant asserts that because LGI Energy was simply a payment agent for various companies, it owed no debt to Defendants. But to the extent that the contract between LGI Energy and its customers obligated the Debtor to make payment to its customers' utility providers, LGI Energy, in fact, had an obligation (*i.e.*, a debt) to Defendants. Payments to utility providers constituted payment of an antecedent debt owed by the Debtor to the Defendants pursuant to contract. *See In re Maurer,* 256 B.R. 495, 502 (8th Cir. B.A.P. 2000) (contract under which, in exchange for a stenographic editing machine, debtor agreed to pay judgment creditor's remaining debt to seller's assignee, was accurately characterized as a contract for the benefit of a third party; debtor was the promisor, judgment creditor was the promise, and seller's assignee was the intended third party beneficiary or "creditor beneficiary" of debtor's promise to pay judgment creditor's debt.)

C. **The Trustee's Complaint States A Claim For Avoidance of Actual And Fraudulent Transfers Under Section 548 And The Minnesota Uniform Fraudulent Transfer Act**.

1. **Plaintiff has adequately pled actual fraud sufficient to sustain Counts Two and Three of the Complaint.**

The Trustee's Complaint more than satisfies the pleading requirement for fraudulent transfers. For purposes of this motion, it is enough that the Complaint in this action adequately alleges fraud. Defendants noticeably cite to non-bankruptcy cases in asserting that the Trustee

---

invoices. To the extent such claims exist, a Defendant would also be a creditor within the reach of 11 U.S.C. § 547(b)(1). Defendants have argued in the context of their Sanctions Motion that the cases cited by Mr. Mohrman and the Trustee are distinguishable because in each of these cases, the party seeking restitution had a legal or equitable right to have the monies returned, *i.e.*, to have restitution; whereas here the monies underlying the 90 Day Transfers did not ever belong to Defendants. Under a third-party beneficiary theory, however, Defendants' analysis is not correct because the third-party beneficiary does, in fact, have a claim to those funds. As stated in the Williston treatise: "Where a promise is made for the benefit of a third person, the promisee has a right of action under ordinary principles of contract law if the promise is broken, and the beneficiary has a similar right of action." 26 Williston on Contracts § 68:6 (4th ed.). Consistent with this analysis, each Defendant arguably had a restitutionary claim to any funds transferred to LGI Energy by Buffets to pay Defendant's invoice but which were not, in fact, used to pay Defendant's invoice. *See generally Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006) ("'restitution'" seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing the incentive to perform the wrongful act again."(citation omitted).)

must plead who, what, why, when and where.  In fact, as noted previously, the bankruptcy courts have been clear that the pleading standard is relaxed for trustees in bankruptcy because the Trustee is an outsider to the facts giving rise to the complaint. *See* discussion at p. __, *supra; see also, In re DBSI, Inc.*, 445 B.R. 344 (Bankr. Del. 2011) (heightened federal pleading requirements for claim of fraud which require plaintiff to state with particularity the circumstances constituting fraud, are relaxed in bankruptcy context, particularly in cases in which trustee has been appointed; in proceeding to avoid transfer as actually fraudulent to creditors, plaintiff can sufficiently plead fraudulent intent by alleged certain badges of fraud, including insolvency or indebtedness of debtors; secrecy or concealment of transaction); *In re Saba Enterprises, Inc.*, 421 B.R. 626 (Bankr. S.D.N.Y. 2009) (strong inference of fraudulent intent required to satisfy fraud pleading rule may be established either (1) by alleging facts demonstrating that defendants had both the motive and the opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness).

In fact, Judge Kyle held recently that compliance with Form 21 of the Appendix of Forms to the Federal Rules of Civil Procedure[10] was sufficient pleading of a fraudulent transfer claim. *U.S. v. Bame*, 2011 WL 1167085 *8 (D. Minn. March 28, 2011).  The relevant portion of Form 21 cited with approval by Judge Kyle reads:

> On [date], defendant [name] conveyed all defendant's real and personal property to defendant [name] for the purpose of defrauding the plaintiff and hindering or delaying the collection of the [plaintiff's] debt.

*Id*.

Although not necessary for purposes of rebutting Defendant's attack on the sufficiency of

---

[10] While Fed. R. Civ. P. 84, which Judge Kyle cited in connection with his approval of Form 21, is not expressly incorporated by the Federal Rules of Bankruptcy Procedure, the sufficiency of the forms (the forms are essentially "notice" pleadings) as a matter of good pleading is nonetheless properly considered here.

the Complaint, a perhaps overly thorough description of the fraudulent scheme is found in the Trustee's action against Dean Leischow.  Having cited *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) in an attempt to pull into the record facts clearly outside the pleadings, Defendants conveniently ignore *Porous Media* and disregard entirely the Leischow Complaint.

As set forth in the Leischow Complaint, Debtors were integral players in a fraudulent scheme which parallels a Ponzi scheme:  funds paid by various customers to cover certain utility bills were instead diverted and used for the Debtors' general operating expenses or other utility bills, and withdrawn by the debtors' principal.  The entire business collapsed when one of the banks froze the Debtors' line of credit, and when the Debtors were unable to continue to move funds from account to account to cover the payments that needed to be made, leaving millions of dollars in unpaid utility bills and other bills.

The fraudulent transfers described in the Leischow Complaint are classic illustrations of transfers made with the actual intent to hinder, delay or defraud creditors.  *Cunningham v. Brown,* 265 U.S. 1, 13 (1924).  *See also In re Pearlman*, 440 B.R. 569 (Bankr. M.D. Fla. 2010) (denying Rule 12 motion; trustee sufficiently alleged connection between loans and Ponzi scheme that it was at least plausible that debtors' loan repayments kept credit flowing and stabilized their fraudulent house of cards perhaps a bit longer, so as to preclude dismissal of trustee's fraudulent transfer avoidance complaint against lender; courts generally look at totality of circumstance and badges of fraud surrounding alleged fraudulent transfer to determine whether transfer was made with requisite intent to hinder delay or defraud creditors; every payment made by debtor to keep Ponzi scheme on-going is made with actual intent to hinder, delay or defraud creditors for fraudulent transfer avoidance purposes.).

Defendant's back-up argument that "all of the payments that the Debtors rendered to the Defendant were made pursuant to the Debtors' business operations and contractual obligations

with their clients" (*see* Def. Mem. at p. __) fails for different reasons.  First, there is no basis to allege that there was consistency between the terms of Debtors' contracts with any two different customers, or in the performance of those contracts with the large numbers of utility companies, including the 15 separate Defendants bringing this motion to dismiss.  Moreover, many Ponzi schemes are predicated on promissory notes, payment on which would be on account of "contractual obligations with their clients."

The point being, it is the transferor's intent (here, the Debtors' intent) and not the transferee's intent that is relevant. *See, e.g., In re Madoff Investment Securities, LLC,* 445 B.R. 206 (S.D. N.Y. 2011).  As discussed above, there is more than a sufficient basis for concluding that the Debtors' regular business operations and contractual relations were tainted by the fraudulent scheme from which this proceeding arises.

### 2. Plaintiff has alleged facts sufficient to state a claim for constructive fraud under Counts Two and Three of the Complaint.

Section 548(a)(1)(B) of the Bankruptcy Code permits the avoidance of transfers in which the debtor "received less than reasonably equivalent value" and either (1) was insolvent on the date the transfer was made or became insolvent as a result of the transfer; (2) was at the time of the transfers, or became thereafter, insufficiently capitalized; (3) intended to incur, or believed it would incur, debts that would be beyond its ability to repay; or (4) made such transfer for the benefit of an insider under an employment contract, and not in the ordinary course of business. 11 U.S.C. § 548(a)(1)(B).

As Defendants concede, a plaintiff pleading constructive fraud does not need to satisfy the heightened pleading standard of Rule 9(b).  *See, e.g., In re Saba Enterprises, Inc.*, 421 B.R. 626 (Bankr. S.D.N.Y. 2009) (heightened standard for pleading fraud does not apply to constructive fraudulent transfer claims) but instead need only comply with the regular pleading standard of Rule 8. The allegations of the Complaint in this action, especially when construed in

the context of the fraudulent scheme detailed in the Leischow Complaint, are sufficient under Rule 8 to survive a Rule 12(b)(6) motion to dismiss.

Defendants allege that the Complaint in this action fails to allege facts to support the Trustee's assertion either that the Debtors were insolvent on the date of the alleged fraudulent transfers or became insolvent as a result of the transfers, or that the Debtors received less than reasonably equivalent value in exchange from the Defendants for the alleged fraudulent transfers. (Def. Mem. at p. 15.)   In essence, Defendants asks this Court to require that the Trustee lay out the evidence to support it case in the context of his Complaint.  Neither Rule 8 nor even the Supreme Court's decisions in *Twombly* and *Iqbal* require this level of specificity.

Indeed, were this level of specificity to be required in a bankruptcy context, it is doubtful that any trustee in a Chapter 7 proceeding could ever get beyond the pleading stage.  The nature of an involuntary bankruptcy proceeding is such that much of the evidence required to conclusively prove the trustee's case is not available at the outset of the proceeding but becomes available only through discovery.  Fortunately, *Twombly* construes Rule 8 to require only that a plaintiff provide factual allegations "enough to raise a right to relief above the speculative level." *Twombly,,* 550 U.S. at 545.

To eliminate any uncertainty that this standard is satisfied, the Trustee appends as Exhibit D to the Wirth Declaration, a proposed Amended Complaint which essentially pulls explicitly into the Complaint in this action many of the facts alleged in the Leischow Complaint.  As alleged, the *modus operandi* of the Ponzi-like scheme which Dean Leischow created means that the corporate entities (here the Debtors) had insufficient funds to satisfy all their contractual obligations because corporate funds that were supposed to be used to fulfill those obligations were, instead, being siphoned off by Dean Leischow and others.  These types of schemes frequently collapse when the debtor no longer can gain new money – and that occurred in the

case of the LGI Entities.  It is also the case in schemes of this type that the architect of the fraudulent scheme typically comingles funds received from various sources, using money as needed to keep suspicious creditors at bay, while ultimately depriving others of funds due them. That also happened here.

The facts that the Trustee has alleged, far from being speculative, make out a plausible case for recovery under both Sections 547 and 548 of the Bankruptcy Code.  By contrast, Defendants' motion goes well beyond the "plausibility standard" applicable to a Rule 12(b)(6) motion; in essence, the Defendants ask this Court to decide at this preliminary stage—before discovery has even started—that they are entitled to prevail as a matter of law on the basis of both undiscovered and disputed facts.   For example:

- At page 15 of their Memorandum, Defendants argue that the Trustee's assertions of an antecedent debt in the context of Count One are dispositive with respect to Count Two.  The law is clear, however, that parties may plead in the alternative under Fed. R. Civ. P. 8, and that facts asserted with respect to one theory in a complaint do not carry over to bind a plaintiff with respect to an alternative theory.  *See* p. 2 *supra.*   The reality is that, although there is plausible evidence that the contract between LGI Energy and its customers was intended to create an obligation running from LGI Energy to the Defendant, it is unclear, at this stage, whether the obligation was actually performed and, if so, whether the obligation was discharged with funds transferred to LGI Energy Solutions from utility customers.  Parties to contracts often perform their duties in a manner different from that contemplated by their agreement.  Defendants cannot use factual allegations made specifically in the context of Count One to bolster an argument for dismissal of Count Two.

- At pages 16-18 of their Memorandum, Defendants assert that the "facts of this case reveal that Debtors retained a fee for providing their utility payment services to their clients."  In

fact, it is not clear that Debtors received a fee for their utility payment services in all cases. Defendants are relying upon a description of facts contained in the Order of the District Court referring unrelated litigation to this Court. For reasons previously discussed, the Court's recitation of facts is not binding on the Trustee and cannot be considered in the context of a Rule 12(b)(6) motion. *See* discussion at p. 9 *supra.* The reality is that the Trustee does yet know whether Debtors were paid a fee or the amount of the fee with respect to utility bill payment services they may have provided. Similarly, Defendants conclusion that "by making the transfer, the Debtors released themselves from liability to their clients concerning the monies at issue" necessarily assumes a fact not yet established—that the monies actually paid over to Defendants were, in fact, the monies transferred by customers to LGI Energy for use in paying the customer's utility bills. As discussed *infra*, a definitive answer to that question will necessarily require a challenging tracing analysis, which analysis has not been made. Defendants cannot rely upon presumed facts which are neither established nor alleged in the Complaint to support its Rule 12(b)(6) motion.

The only issue properly before this Court in the context of Defendants' Rule 12(b)(6) motion is whether the Trustee has alleged facts, which if accepted as true, establish a plausible theory of recovery. The Trustee has satisfied that standard.

### 3. The Trustee Properly Pled The Claim For Avoidance Under State Law.

Defendant argues that the Trustee may not employee a state-law fraudulent transfer claim using the powers conferred by Section 544 because the Trustee has not identified a particular creditor who was a creditor at the time of the challenged transfer and when the Debtors entered bankruptcy. As an initial matter, it is important to note that this pleading requirement does not apply to the Trustee's claims under Section 548, which are coextensive with the state-law claims, albeit for only two years pre-petition.

More importantly, however, a list of creditors that have the ability to bring a Minnesota-state law claim for avoidance of fraudulent transfers can be found in the Claims Register in this bankruptcy case.[11]   Minn. Stat. § 513.44, which is one of the bases for the Trustee's state-law avoidance claim, expressly provides, including in its title, avoidance rights to 'Present and Future Creditors.'  Thus, any entity that has filed a proof of claim is, at a minimum, a 'future creditor' with respect to any transfer made in the past, and thereby could have brought an avoidance action.  *See, also, In re Marlar*, 252 B.R. 743, 754-55 n4 (B.A.P. 8th Cir. 2000) (examining Arkansas Uniform Fraudulent Transfer Act).

The only prong of the Minnesota Fraudulent Transfer Act that requires that a creditor's claim precede or be contemporaneous with the challenged transfer is Minn. Stat. § 513.45, 'Transfers Fraudulent as to Present Creditors.'  One example of such a 'present creditor,' is Dean Leischow, the Debtors' principal with whom the Trustee is engaged in separate litigation. According to the information available to the Trustee, the Debtors' financial records show a loan from officer debt going back to 2006.  The Trustee is confident that, after conducting discovery, more similarly situated creditors will emerge from the Debtors' fraudulent scheme.  If Debtors' enterprise was insolvent from the beginning (as is often the case with Ponzi-type schemes), it is entirely possible that all of Debtors' customers were unpaid creditors from the commencement of their relationship with the Debtors.  Discovery, and time, will tell.

### D. Ownership Of The Funds Transferred By Debtors To Defendant Is An Issue Of Disputed Fact That Cannot Be Resolved By A Rule 12 Motion.

Defendants argue at length that Counts One, Two and Three of the Complaint must be dismissed because the transfers to them do not constitute transfers of property of the estate.  Both arguments are obviously dependent on facts that are very much in dispute, and, can be resolved

---

[11] In contrast to the Defendants' abuse of the limited exception to Rule 12's prohibition on extraneous materials, the Court can take judicial notice of that fact that creditors have filed claims in this bankruptcy case.

only by Defendants' successful tracing of funds. Such a factual resolution, with no evidence adduced, would be inappropriate even in the context of a Rule 56 motion for summary judgment. There is no place for such a resolution in a Rule 12(b)(6) motion.

Although the Trustee does not yet have the benefit of discovery, it is clear—contrary to the assumption underlying Defendants' Motion to Dismiss—that funds paid to LGI Energy for the purpose of paying a customer's utility bills were not separately segregated for this purpose. Instead, the funds were commingled in a bank account maintained by Debtors with funds of other customers, borrowed funds and some legitimate revenue, all of which were treated by Leischow as property of the Debtors and all of which he used at his discretion. In the case of the Utility Defendants, funds received by LGI Energy from utility customers were commingled in the U.S. Bank account maintained by Debtors. Funds in this account are known to have come from other U.S. bank accounts as well as from the Debtors' M&I accounts, and from reversed transactions. (*See* Bky. Doc. No. 189, at pp. 10-12, and related Declaration of Tyler Candee.)

Defendants contend that the monies which underlie the 90 day transfers were taken by Debtor under a bailment and, as such, never became property of the Debtors. Defendants' account of the facts upon which it bases its argument (Def. Mem. at p. 25) are offered with no citation to the record. Presumably, Defendants are deriving these facts from the September 8, 2009, District Court order referring the litigation relating to Buffets, Inc. with respect to Adv. No. 09-04299 to the Bankruptcy Court.

In essence, Defendants' argument assumes away one of the large looming fact issues in this proceeding—the difficulty of tracing funds received by the Debtors to show their ultimate disposition. That issue will need to be addressed at some point in the course of these proceedings, but a Rule 12(b)(6) motion is neither the time nor the place to do that.

The difficulties of establishing whether funds used by the Debtors to pay utility bills were the property of the Debtors or the Debtors' customers (and, by extension, the utility companies as third party beneficiaries of LGI Energy's contracts with its customers) has been addressed by this Court in a different adversary proceeding involving a different account. As is clear from briefing in that action,[12] the determination of this issue turns on an analysis of the relevant contract language as well as an analysis of the bank accounts into which the funds were deposited, including the determination of lowest intermediate value of those accounts during the relevant time period. It is the Trustee's position that the funds paid to the Defendants were, in fact, the Debtors' funds. In any event, however, this issue obviously is not one appropriate for resolution in the context of a Rule 12(b)(6) motion.

Under Minnesota law, which governs the existence and extent of property interests, funds held in a bank account are presumed to belong to the account holder. *In re Estate of Whish,* 622 N.W.2d 847, 850 (Minn. App. 2001). This rule is nearly universal. *See In re Pyatt,* 486 F.3d 423, 427 (8th Cir. 2007) ("Pyatt had a legally recognized interest in his checking account when he filed for bankruptcy, and checking account balances became 'property of the estate' once a bankruptcy petition is filed."); *In re Amdura Corp.*, 75 F.3d 1447, 1451 (10th Cir. 1996) ("We presume that deposits in a bank to the credit of a bankruptcy debtor belong to the entity in whose name the account is established); *In re Amp'd Mobile, Inc.,* 377 B.R. 478, 483 (Bankr. D. Del. 2007)("Property held by a debtor is presumed to be property of the estate"); Collier on

---

[12] The adversary proceeding in question involved a motion by Buffets, Inc. seeking a summary judgment that certain funds seized from an M&I account belonged to Buffets. In that action, the funds in question had been deposited in the account within days before the date on which the funds were seized. Because the account had not been depleted, Buffets was able to trace funds in the amount of $245,957.36, but was unable to trace the remaining funds in the amount of approximately $41,000. This Court granted summary judgment in favor of Buffets as to the funds it was able to trace, but not as to the remaining funds, thus underscoring the need for creditors claiming an ownership interest in funds contained in a bank account whose contents are known to have originated from multiple sources to prove their ownership interest through tracing.

Bankruptcy ¶ 541.09 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. Rev. 2008) ("deposits in the debtor's bank account become property of the estate under § 541(a)(1)").

In order to overcome this strong presumption that money in Debtors' bank accounts belong to the Debtors, the Defendants would have to prove that the particular funds in Debtors' bank account belonged to someone other than the Debtors.  Here, Defendants reach outside the Complaint to assert that it had a bill-payment, bailment or disbursing-agent relationship with LGI Energy.  And they do so on the basis of facts set forth in a District Court Order that neither addresses nor purports to decide the ownership of property in the bankrupt estate. *See* discussion at p. __ *supra.*  Not only may this "evidence" not be considered in the context of a Rule 12(b)(6) motion, it could not even be considered in the context of a summary judgment motion.

Assuming *arguendo* that Defendants could establish the existence of a trust-type relationship, they would still need to trace the transfers of monies they claim were properly made to them through the Debtors' bank accounts. "In a true consignment arrangement, bailment, or agency, recovery by the bailor, principal, or consignor rests upon identification.  When the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's, the owner must definitely trace that which he claims as contained in the assets of the estate."  *In re Rine & Rine Auctioneers, Inc.*, 74 F.3d 854, 860 (8th Cir. 1996) (quoting 4 Collier ¶ 541.08, at 541-47).

Even under the liberal tracing mechanism afforded by the lowest intermediate balance test, tracing is impossible and the presumption of possession remains intact if the account was reduced to zero or overdrawn at any time:

> Under the lowest intermediate balance test, a court follows the trust fund to and decrees "restitution from an account where the amount in deposit has at all times since the commingling of the funds equaled or exceeded the amount of the trust fund." "should the amount on deposit be reduced below the amount of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account."  The lowest intermediate balance test is based on a fiction that

29

non-trust funds are first withdrawn, retaining as much of the trust fund as possible in the account. However, if the account is depleted after the trust fund has been deposited, the trust fund is treated as lost.

*In re MJK Clearing, Inc.*, 371 F.3d 397, 402 (8th Cir. 2004) (internal quotations omitted).

Defendants have not demonstrated that they can trace the monies they claim are theirs. And, in any event, the tracing exercise would inevitably raise factual issues not appropriately addressed in the context of a Rule 12(b)(6) motion.

In sum, Defendants are asking this Court essentially to decide, in the guise of a Rule 12(b)(6) motion and on the basis of an incomplete record and disputed facts, the thorny issue of property ownership, an inherently fact-laden issue. Defendants' request is improper and should be summarily denied.

### E. Paragraphs 13 And 14 Of The Complaint Are Unmistakably Definite.

Defendant also cavils that Paragraphs 13 and 14 of the Complaint – the Trustee's allegations concerning Defendant's status as a creditor and that the 90 day transfers were made "for or on account of an antecedent debt owed by Debtors to Defendant" – are somehow insufficient. These allegations are not so "vague and ambiguous as to be unintelligible" or "to prejudice the defendant seriously in attempting to answer it." *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 233 F.R.D. 133, 134 (S.D.N.Y. 2005) (cited by Defendants at p. 9). Moreover, under the authority cited by Defendants, there is no need for a more definite statement "where the tools of discovery will enable the parties to fill-in the gaps of an allegation [allegedly] lacking in sufficient detail." (Def. Mem. at 9). There simply is no confusion as to the basis for Plaintiff's allegations. Defendants' motion for a more definite statement should, accordingly, be denied.

### F. Count Four Of The Complaint Is Not Moot.

Count Four of the Complaint asks that "Defendant's claim, if any" (emphasis supplied) in Debtors' bankruptcy cases be disallowed "unless Defendant first pays the amount for which it is liable to Plaintiff under 11 U.S.C. § 550(a)." In essence, this count simply tracks the Bankruptcy Code in requiring that each Defendant comply with a statutory prerequisite to recovery on any affirmative claim it might assert. Defendants insist that because they have not asserted any claims against the Debtors in these bankruptcy cases and the bar date for the filing of proofs of claim has "long since passed." Page 14 of Defendants' Motion For Sanctions (which has not

been filed as of the time of the filing of this Memorandum).  Count Four should be dismissed as moot.

The time for Defendants to file a proof of claim in these cases has not, however, "long since passed."  While Defendants have not filed a claim that would be considered timely, that is not the same thing as being prohibited from filing a claim.  As this Court is well aware, claims may be <u>filed</u> tardily and, in some circumstances, such claims are not automatically disallowed. *See In re Hausladen,* 146 B.R. 557 (Bankr. D. Minn. 1992), *abrogated in part by* 11 U.S.C. § 502(b)(9); *see also In re Simpkins*, 2011 WL 1770476 (Bankr. N.D. Ga. March 18, 2011) (claims filed in a Chapter 7 proceeding are not subject to disallowance simply due to their untimeliness, citing 11 U.S.C. §§ 501, 502(b)(9); where claimant filed a proof of claim after claims bar date but no objections to claim were filed, claim would be allowed despite its untimeliness); *In re Graycarr, Inc.*, 330 B.R. 741 (Bankr. W.D. Ark. 2005) (IRS's delay in not filing proof of claim for priority taxes until after claims bar date expired was insufficient basis for disallowing its claims, where claim was filed prior to distribution of property by Chapter 7 trustee).  While the Trustee would have grounds to object to the allowance of a claim tardily filed by the Defendants, they are not prohibited from filing a claim in this case.

The Trustee has stated clearly in correspondence with Defendants' counsel that it agrees that "to the extent that a claim was not filed, [Count Four] is not applicable to that creditor."  *See* Wirth Decl. Exs. A and C) (reaffirming this position and noting that "To the extent your clients did not file a claim, this Count of the Complaint is not applicable.  I discussed this in my letter to you of April [sic] 29, 2011 where I stated that we agreed to extent a claim was not filed, that this Count was not applicable").)  The Trustee stands ready to enter into a stipulation confirming that if Defendant agrees to not assert a claim of any kind in the bankruptcy case, Count Four is not at issue.

### G.  The Separate Argument Of Appalachian Power Is Without Merit.

At page 8 of its Memorandum in Support of Motion to Dismiss, Appalachian Power Company contests the Trustee's claim that eleven payments made by the Debtors to Appalachian are alleged preference transfers under Section 547(b) of the Bankruptcy Code.  Appalachian contends, instead, that only five of the checks—totaling $23,030.15—were actually made payable to it, and that, accordingly, the Court should require the Trustee to amend the Complaint to eliminate other checks "that the Plaintiff knew or should have know[n] were not made to the Defendant."

In fact, however, as defense counsel knows, the issue of the payments to Appalachian is not as clear-cut as Appalachian would have the Court believe.  Attached as Ex. E to the Wirth Declaration is a letter sent by Plaintiff's counsel to defense counsel on April 28, 2011, which discusses Appalachian's claim.  As documented in that letter, all of the checks referenced in the Complaint were deposited into the same bank account, although some of the checks were made payable to a payee with a name other than Appalachian Power.  As explained in the April 28, 2011, the fact that the checks were all deposited into a single bank account, however, raises a reasonable inference that the entities are somehow related.  In *In re MBC Greenhouse, Co.,* 307 B.R. 787, 793 (Bankr. Del. 2004), the Court held that an Amended Complaint can relate back for purposes of Rule 15 of the Federal Rules of Civil Procedure, to the extent it seeks to add, as additional defendants, corporations that are related, as parent or subsidiaries, to an originally named defendant.  Based on the information available to it in this case, the Trustee acted reasonably in assuming a relationship between Appalachian and the other payees sufficient to render all entities subject to an  avoidance of preferential transfers.   The Trustee invited defense counsel to provide information or documentation on this issue that might help resolve it.  Defense Counsel has provided nothing to disprove the Trustee's theory of recovery.

## CONCLUSION

A Rule 12(b)(6) motion properly tests the sufficiency of the pleadings, asking whether, accepting as true the facts alleged, the plaintiff has stated a plausible theory on which relief could be granted.   Defendants ask this Court, in essence, to ignore the pleading standards of Rules 8 and 9 of the Federal Rules of Civil Procedure, as reflected in the parallel Bankruptcy Rules, and, instead, to decide on the merits issues as to which discovery has not yet been had.  The Court should decline this invitation to circumvent the Federal Rules of Civil Procedure and should instead deny Defendants' motion in its entirety.

Dated:  June 10, 2011

LAPP, LIBRA, THOMSON, STOEBNER
& PUSCH, CHARTERED


By:  /e/ Rosanne H. Wirth
John R. Stoebner (#0140879)
Rosanne H. Wirth (#0137479)
Tyler D. Candee (#0386598)
One Financial Plaza, Suite 2500
120 South Sixth Street
Minneapolis, MN 55402
T (612) 338-5815
F (612) 338-6651
jstoebner@lapplibra.com
rwirth@lapplibra.com
tcandee@lapplibra.com

**ATTORNEYS FOR PLAINTIFF
JOHN R. STOEBNER, TRUSTEE**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 |
| LGI Energy Solutions, Inc., | Bky. Case No. 09-40665-RJK |
| and | |
| LGI Data Solutions Company, LLC, | Bky. Case No. 09-40666-RJK |
| Debtors. | |
| (Substantively consolidated cases) | |
| John R. Stoebner, Trustee, | Adv. No. 11-04063 |
| Plaintiff, | |
| vs. | |
| Florida Power Corporation d/b/a Progress Energy Florida, | |
| Defendant. | |

## DECLARATION OF ROSANNE H. WIRTH
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Rosanne H. Wirth declares under penalty of perjury as follows:

1.       I am an attorney duly licensed and admitted to practice in the State of Minnesota and in this Court.  I am an attorney for John R. Stoebner, trustee of the Chapter 7 bankruptcy estates of LGI Energy Solutions, Inc. and LGI Data Solutions Company, LLC.  I make this Declaration based upon my personal knowledge and review of my firm's files, including documents that we received pursuant to subpoenas and discovery in litigation involving the Debtors.

2.       Attached as **EXHIBIT A** is a true and correct copy of April 29, 2011 letter from Rosanne H. Wirth to Russell R. Johnson III, together with the following attachments:

(a)       March 18, 2011 letter from Buffets, Inc.;

(b)     Copy of the Complaint against Dean and Kelly Leischow and L&A, Adversary Proceeding No. 11-04041;

(c)     Doc No. 189 filed in Bankruptcy Case No. 09-40665, the Trustee's Response to Objections to First Omnibus Notice of Settlement; and

(d)     February 25, 2011 decision by Magistrate Judge Noel in US Commodity Future Trading Commission vs. Trevor Cook, Civil No. 09-3332.

3.     Attached as **EXHIBIT B** is a true and correct copy of May 12, 2011 E-mail and letter to Rosanne H. Wirth from Russell R. Johnson III.

4.     Attached as **EXHIBIT C** is a true and correct copy of May 13, 2011 letter from Rosanne H. Wirth to Russell R. Johnson III.

5.     Attached as **EXHIBIT D** is a true and correct copy of Plaintiff's Proposed Amended Complaint against the Utility Defendants, including a clean copy and a redlined copy.

6.     Prior to commencing the various adversary proceedings against utility companies, the Trustee and I, along with other members of the Trustee's legal counsel and staff, reviewed transfers made by the Debtors to approximately 127 different recipients, as potential avoidance claims. The Trustee sent demand letters to only 89 of those recipients, and commenced suit against only 37.

7.     Attached as **EXHIBIT E** is a true and correct copy of April 28, 2011 letter from Rosanne H. Wirth to Russell R. Johnson III.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 10, 2011                          /e/ Rosanne H. Wirth
                                              Rosanne H. Wirth